UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(West Palm Beach)

CASE NO.:  9:14-cv-81085-DMM

SCHNEIDER ROTHMAN INTELLECTUAL
PROPERTY LAW GROUP PLLC,

    Plaintiff,

v.

GETTY IMAGES (US), INC.,

    Defendant,

and

ZEMANTA, INC.,

    Defendant.
_____/

**DEFENDANT GETTY IMAGES (US), INC.'S MOTION TO DISMISS**

**I.    INTRODUCTION**

    Getty Images (US), Inc. ("Getty Images") is one of the world's leading content providers. It supplies imagery, video, and music to business customers for a wide variety of uses, including websites, books, newspapers, magazines, film and television production, advertisements, and product packaging.  It is the world's largest provider of commercial visual content and the leading provider of commercial images online.  Included among Getty Images' collection of works are many of the most iconic, creative and engaging photographic images ever created.

    In July 2014, Getty Images sent a letter to Schneider Rothman Intellectual Property Law Group PLLC ("SRIPLAW") notifying the law firm that it was using a photograph from Getty Images' catalog and that Getty Images had been unable to locate a license authorizing that use. In the letter, Getty Images requested that SRIPLAW identify any applicable license.  Getty Images' letter also advised SRIPLAW that if the law firm believed it had received the letter in

1

error, SRIPLAW should contact Getty Images. Finally, Getty Images' letter stated that if no valid license existed, the company would settle the unlicensed use for a payment of $380.

SRIPLAW responded to Getty Images' letter not by producing an applicable license or asserting that it believed the letter was sent to the law firm in error. Similarly, SRIPLAW did not respond to Getty Images' $380 settlement offer or propose a lesser sum it deemed appropriate. Instead, SRIPLAW filed this lawsuit (1) alleging that Getty Images' letter violates the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA"), and (2) requesting a judicial declaration of non-infringement of copyright in connection to its use of the image.

Both of SRIPLAW's claims fail as a matter of law. First and most fundamentally, SRIPLAW ignores a long line of Supreme Court and Eleventh Circuit decisions holding that the First Amendment right to petition the courts immunizes litigation-related activities, including pre-litigation letters like the one at issue here, from a claim like SRIPLAW's. *See McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1558 (11th Cir. 1992) (citing *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965)). This well-established legal principle, commonly referred to as *Noerr-Pennington* immunity, has been consistently applied by courts of the Eleventh Circuit to dismiss claims of the type asserted by SRIPLAW. *See, e.g.*, *McGuire Oil*, at 1562 (affirming trial court's dismissal of counterclaim under Alabama Unfair Trade Practices Act ("AUTPA") based on *Noerr-Pennington* immunity); *Atico Int'l USA, Inc. v. LUV N' Care, Ltd.*, 09-60397-CIV-COHN, 2009 WL 2589148, at *3-*4 (S.D. Fla. Aug. 19, 2009) (dismissing FDUTPA claim on motion to dismiss); *Rolex Watch U.S.A., Inc. v. Rainbow Jewelry, Inc.*, 12-21437-CIV, 2012 WL 4138028, at *3-*4 (S.D. Fla. Sept. 19, 2012) (dismissing FDUTPA counterclaim to trademark infringement lawsuit). Accordingly, SRIPLAW's FDUTPA claim must be dismissed based on *Noerr-Pennington* immunity. *See* Section III.B, *infra*.

Further, the conduct alleged in SRIPLAW's complaint fails to support two essential elements to a FDUTPA claim. The FDUTPA claim fails for these additional reasons as well. *See* Section III.C, *infra*.

As to SRIPLAW's claim for declaratory judgment of non-infringement of copyright, Getty Images has executed a covenant not to sue that renders moot the relief sought by

2

SRIPLAW.[1]  Accordingly, there is no case or controversy for this Court to resolve, and the declaratory judgment claim must therefore be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  *See* Section III.D, *infra*.

## II.   FACTUAL BACKGROUND

SRIPLAW alleges that it is a Boca Raton, Florida law firm specializing in intellectual property law.  Complaint ¶¶ 17, 20-21.  SRIPLAW maintains a website at www.sriplaw.com, on which it publishes original content related to its law practice.  *Id.* ¶¶ 1, 23.  SRIPLAW alleges that through an agreement with Zemanta, a content syndication network, it also displayed on its website thumbnail images and links to related content for promotional and marketing purposes.  *Id.* ¶¶ 2-3, 23-24.  As related to this action, SRIPLAW alleges that its website displayed a thumbnail-sized photograph of a woman texting on a mobile phone while driving (the "Image"), which was accessible through a link placed on the website by Zemanta.  *Id.* ¶¶ 6, 26, 31.  According to SRIPLAW's allegations, the Image linked to another website that, SRIPLAW alleges "[u]pon information and belief," was licensed by Getty Images to use the Image.  *Id.* ¶ 27.

Getty Images sent a pre-litigation settlement letter (the "Settlement Letter") to SRIPLAW dated July 1, 2014, notifying SRIPLAW that it was "using an image (or images) represented by Getty Images for online promotional and/or editorial purposes."  *Id.* ¶ 6 & Ex. A at 1.  Getty Images advised SRIPLAW that "[w]e have searched our records and have not been able to locate a valid license for the use of the image[] under your company's name."  *Id.* Ex. A at 1.  With the letter, Getty Images included a copy of the Image and a "screenshot" of its use on SRIPLAW's website.  *Id.* Ex. A at 3.  The Settlement Letter explained that "[t]he purpose of this communication is to identify a previously purchased license or reach a fair settlement if no valid

---

[1] The covenant not to sue is consistent with public statements made by Getty Images after it learned that that the photograph at issue was allegedly displayed on SRIPLAW's website as a result of a content syndication network operated by defendant Zemanta, Inc.  SRIPLAW sued Zemanta for indemnification "[i]n the event that SRIPLAW is determined to be liable to Getty for infringement of copyright in [the] Image."  Complaint ¶ 51.  Because SRIPLAW's claim against Zemanta is dependent upon a finding of copyright infringement for display of the Image on SRIPLAW's website, the covenant not to sue moots that claim.

[2] Probable cause "does not demand any showing that such a belief be correct or more likely true than false.  A practical, nontechnical probability that incriminating evidence is involved is all that is required."  *Texas v. Brown*, 460 U.S. 730, 742 (1983) (internal quotation marks omitted).

license exists." *Id.* Ex. A  The Settlement Letter further asked that "[i]f the image[] [was] licensed in the name of a third party, such as an advertising agency or web designer, please advise us of their name and ask them to contact us directly to determine if there is a valid license in place." *Id.* Ex. A at 1.  Additionally, the Settlement Letter stated in highlighted text that "**[i]f you believe you have received this letter in error or have questions, please contact us at 1 800 972 4170 or email licensecompliance@gettyimages.com.**" *Id.* Ex. A at 2 (emphasis in original).  A "Frequently Asked Questions" section of the letter similarly requested that SRIPLAW contact Getty Images immediately if it believed it received the letter in error. *Id.* Ex. A at 5.

SRIPLAW never offered Getty Images an explanation of its use of the Image in response to the Settlement Letter.  Instead, SRIPLAW filed this lawsuit in which it asserts that the law firm should be excused from copyright liability for its admitted unauthorized use of the Image based on the fair use defense, 17 U.S.C. § 107, as interpreted in a case from the Ninth Circuit. *Id.* ¶¶ 7, 9.  SRIPLAW further speculates that it "may [be] entitle[d]" to a safe harbor defense under the Digital Millennium Copyright Act, 17 U.S.C. § 512. *Id.*

Notably, SRIPLAW has not alleged that it was sued by Getty Images in connection to the law firm's unauthorized use of the Image.  SRIPLAW can never make such an allegation because on September 26, 2014, Getty Images served on the firm a covenant not to sue based on the Image, a copy of which is attached as Exhibit A to this Motion.

### III.    ARGUMENT

**A.    Fed. R. Civ. P. 12(b)(6) and 12(b)(1) Standards.**

Getty Images moves to dismiss SRIPLAW's FDUTPA claim under Fed. R. Civ. P. 12(b)(6).  Although the Court should accept the facts alleged in the Complaint as true on a 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Accordingly, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 550).  Conclusory allegations are insufficient to prevent dismissal. *Quality Foods de Centro Am., S.A. v. Latin American Agribusiness Dev. Corp.*, 711 F.2d 989, 995 (11th Cir. 1983).  "[A]lthough notice pleading does not require a plaintiff to specifically plead every element of his cause of action, a complaint must still contain enough information regarding the

4

material elements of a cause of action to support recovery under some viable legal theory." *Am. Federation of Labor and Congress of Indus. Organizations v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (affirming dismissal of claim for lack of information about a material element of the claim) (internal quotation marks omitted).

Additionally, to the extent SRIPLAW's allegations mischaracterize the content of the Settlement Letter, this Court must look to the actual language of the Settlement Letter, a copy of which SRIPLAW attached to its Complaint. *See* Complaint Ex. A. A court "need not accept as true conclusory allegations that are self-contradicted by documents attached to Plaintiff's complaint." *Brown v. S. Florida Fishing Extreme, Inc.*, 08-20678CIV-GOLDMCAL, 2008 WL 2597938, at *2 (S.D. Fla. June 27, 2008); *see also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) ( "Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."); *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974).

Specifically with respect to the *Noerr-Pennington* doctrine (*see* Section III.B, *infra*), "*Noerr-Pennington* immunity is not merely an affirmative defense," but instead imposes on a plaintiff the burden "to allege facts sufficient to show that *Noerr-Pennington* immunity did not attach to plaintiff's actions." *McGuire Oil*, 958 F.2d at 1558 n.9.

Lastly, Getty Images moves to dismiss SRIPLAW's declaratory judgment claim under Fed. R. Civ. P. 12(b)(1). "A declaratory judgment action does not, by itself, provide jurisdiction." *IVX Animal Health, Inc. v. Burger*, 475 F. Supp. 2d 1264, 1266 (S.D. Fla. 2007). Instead, "[t]he existence of an actual controversy is an absolute predicate for declaratory judgment jurisdiction." *Id.* (internal citation and quotation marks omitted). For the purpose of Fed. R. Civ. P. 12(b)(1), the burden of proof for jurisdiction falls on the declaratory judgment plaintiff. *Id.*

**B.    *Noerr-Pennington* Immunity Bars SRIPLAW's FDUTPA Claim.**

    **1.    The *Noerr-Pennington* Doctrine Applies to Getty Images' Pre-Litigation Settlement Letter.**

The *Noerr-Pennington* doctrine is based on the First Amendment right "to petition the government for a redress of grievances" – a right the Supreme Court held "extend[s] to situations

5

where groups use courts to advocate their causes and points of view respecting resolution of their business and economic interests." *BE & K Constr. Co. v. N.L.R.B*, 536 U.S. 516, 524-25 (2002) (internal quotation marks omitted); *see also Andryx Pharm., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1233 (11th Cir. 2005). Although the doctrine arose in the antitrust context, the Eleventh Circuit (and other circuits) recognizes "[a] form of litigation immunity akin to the immunity provided by the *Noerr-Pennington* doctrine [that] applies to non-antitrust cases, such as the FDUTPA." *Atico Int'l*, 2009 WL 2589148, at *2 & n.2 (citing *McGuire Oil*, 958 F.2d at 1561-62) (listing cases barring state-law causes of action, including unfair competition claims, under *Noerr-Pennington* doctrine); *see also Rolex Watch*, 2012 WL 4138028, at *3-*4 (dismissing FDUTPA counterclaim to trademark infringement lawsuit based on *Noerr-Pennington* immunity).

The *Noerr-Pennington* doctrine immunizes not only the institution of civil actions, but also pre-litigation activities. *McGuire Oil*, 958 F.2d at 1559. In *McGuire Oil*, the Eleventh Circuit held that the *Noerr-Pennington* doctrine protected "concerted and repeated threats of litigation . . . no less than the actual initiation of litigation . . . :"

> given that petitioning immunity protects joint litigation, it would be absurd to hold that it does not protect those acts reasonably and normally attendant upon effective litigation. The litigator should not be protected only when he strikes without warning. If litigation is in good faith, a token of that sincerity is a warning that it will be commenced and a possible effort to compromise the dispute.

958 F.2d at 1559 (citing *Coastal States Marketing, Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983)).

Courts in the Eleventh Circuit consistently have dismissed actions arising out of pre-litigation demand letters – like the Settlement Letter at issue here – based on *Noerr-Pennington* immunity. *See, e.g., PODS Enters., Inc. v. ABF Freight Sys., Inc.*, 8:11-CV-84-T-33MAP, 2011 WL 4948397, at *5 (M.D. Fla. Oct. 17, 2011) (dismissing claim based on cease-and-desist letters because such activity was immunized under *Noerr-Pennington*); *Atico Int'l*, 2009 WL 2589148, at *3 (dismissing FDUTPA claim based on letter providing notice to plaintiff of defendant's rights and cautioning plaintiff against taking future actions that would constitute infringement because letter was pre-litigation activity protected by *Noerr-Pennington*); *see also Marco Island Cable, Inc. v. Comcast Cablevision of the South, Inc.*, 2:04-CV-26-FTM-29DNF, 2006 WL

1814333, at *10 (M.D. Fla. July 3, 2006) (letters sent by defendant to plaintiff's customers threatening legal action to enforce defendant's rights were protected from lawsuit by *Noerr-Pennington* immunity); *cf. Rolex Watch*, 2012 WL 4138028, at *3 ("Nor can Rainbow successfully amend its Counterclaim to include Rolex's pre-suit conduct and thereby state a viable cause of action against Rolex under FDUTPA. Both the United States Supreme Court and the Eleventh Circuit Court of Appeals have made clear that an entity is immune from suit for taking – or even threatening – legal action that has an anticompetitive effect under the *Noerr-Pennington* doctrine.").

By its plain terms, "[t]he purpose of [the Settlement Letter] is to identify a previously purchased license or reach a fair settlement if no valid license exists." Complaint Ex. A at 1. Accordingly, the Getty Images' Settlement Letter is protected pre-litigation activity under the *Noerr-Pennington* doctrine. *See, e.g.*, *McGuire Oil*, 958 F.2d at 1559; *Atico Int'l*, 2009 WL 2589148, at *2; *PODS Enters.*, 2011 WL 4948397, at *5; *Marco Island Cable*, 2006 WL 1814333, at *10.

        2.        The "Sham Exception" to the *Noerr-Pennington* Doctrine Does Not Apply.

In *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993) ("*PRE*"), the Supreme Court carved out an extremely narrow exception to *Noerr-Pennington* immunity, holding that so-called "sham" petitions are not entitled to protection. 508 U.S. at 60. That exception applies only in the rare circumstance that "(1) the lawsuit is objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits; <u>and</u> (2) the party bringing the allegedly baseless suit did so with a subjective motivation to interfere <u>directly</u> with the business relationships of a competitor." *Andryx Pharm.*, 421 F.3d at 1233-34 (quotation marks omitted; second emphasis in original) (citing *PRE*, 508 U.S. at 60-61). "The burden falls on the party challenging immunity to show that the underlying litigation is a 'sham.'" *Atico Int'l*, 2009 WL 2589148, at *3. And that party must establish that the lawsuit or pre-litigation activity was <u>both</u> objectively baseless <u>and</u> subjectively motivated. *PRE*, 508 U.S. at 60-61. Here, SRIPLAW has not alleged that the Settlement Letter was either objectively baseless or brought with a subjective motivation to interfere directly with SRIPLAW's business.

        a.        **SRIPLAW Failed to Plead that Getty Images' Settlement Letter Was Objectively Baseless.**

Nowhere in the Complaint does SRIPLAW allege that the Settlement Letter was "objectively baseless." Nor can the law firm make such an allegation. A lawsuit or pre-litigation activity is considered objectively baseless only "when no reasonable litigant could realistically expect success on the merits." *In re Terazosin Hydrochloride Antitrust Litig.*, 335 F. Supp. 2d 1336, 1357-59 (S.D. Fla. 2004) (internal citation and quotation marks omitted) (defendant pharmaceutical patent holder's legal theory was "a stretch, [but] did not exceed the pale of an aggressive attempt to extend the existing law, and thus was not objectively baseless"). In other words, "[i]f an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under [*Noerr-Pennington*]." *Id.* at 1357. Indeed, mere "probable cause" is sufficient to negate the "sham" exception.[2] *PRE*, 508 U.S. at 62. Moreover, conclusory allegations of baselessness are insufficient to establish the sham litigation exception. *See Atico Int'l*, 2009 WL 2589148, at *4 (rejecting conclusory allegations of baselessness).

As the Court can readily determine for itself, the Settlement Letter is not objectively baseless. The Settlement Letter explained that Getty Images determined that one of its photographs was being used on SRIPLAW's website and that the company could not locate a valid license for that use. Complaint Ex. A at 1. The Settlement Letter further invited a dialogue with SRIPLAW about whether a valid license existed for the use of the Image. *Id.* Ex. A at 1. Finally, the Settlement Letter encouraged SRIPLAW to contact Getty Images if it believed it had received the letter in error. *Id.* Ex. A at 2, 5. That SRIPLAW appeared to be displaying the Image without a license is more than ample reason for Getty Images to inquire regarding whether the law firm had such a license and, if no such license existed, to attempt to settle the matter.

SRIPLAW cannot overcome this defect by disputing its liability for copyright infringement.[3] *See* Complaint ¶¶ 7, 9 (asserting fair use defense under 17 U.S.C. § 107 and safe harbor defense under 17 U.S.C. § 512). As a matter of law, such allegations do not amount to a

---

[2] Probable cause "does not demand any showing that such a belief be correct or more likely true than false. A practical, nontechnical probability that incriminating evidence is involved is all that is required." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (internal quotation marks omitted). "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). The definition of probable cause is the same in both the civil and criminal contexts. *See Haupt v. Dillard*, 17 F.3d 285, 288 (9th Cir. 1994).

[3] SRIPLAW's contention that the Settlement Letter did not assert a viable copyright infringement claim is based upon authority that has not been adopted by the Eleventh Circuit. *See* Complaint ¶ 7 (relying upon Ninth Circuit authority).

showing of objective baselessness, as "sham litigation requires more than a failed legal theory." *C.R. Bard, Inc. v. M3 Sys. Inc.*, 157 F.3d 1340, 1368-69 (Fed. Cir. 1998) (citing *PRE*, 508 U.S. at 60-61 n.5 ("even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit")); *accord Atico Int'l*, 2009 WL 2589148, at *4 (rejecting allegation that underlying infringement claim was baseless); *Static Control Components, Inc. v. Lexmark Intern., Inc.*, 697 F.3d 387, 408 (6th Cir. 2012) ("The Sixth Circuit's ultimate conclusion that [defendant] lacked a valid copyright claim is not determinative of whether the initial suit was reasonable.").[4]

The *Rolex Watch* case is illustrative.  In *Rolex Watch*, Rolex brought a trademark infringement suit against a jewelry retailer who used Rolex's trademark on its awning without authorization.  2012 WL 4138028, at *1.  The retailer responded with a FDUTPA counterclaim against Rolex.  *Id.* at *2.  The court found that because "it appears both parties have credible arguments as to why they will succeed on the merits," the sham exception was inapplicable.  *Id.* at *4.

Similarly, in *Marco Island Cable*, Comcast sent demand letters to the subscribers of a competitor, Marco Island Cable, demanding access to the subscribers' premises to remove cable wiring.  2006 WL 1814333, at *9.  Comcast's letters allegedly misrepresented the ownership of the wiring, claiming that Comcast owned that hardware when in fact Marco Island Cable did.  *Id.*  Marco Island Cable brought a FDUTPA claim against Comcast, claiming that the letters fell under the sham exception for being objectively baseless.  *Id.*  The court rejected Marco Island Cable's argument and dismissed the FDUTPA claim, reasoning that "[i]t is not unusual that the basis claimed to underlie the potential lawsuit is disputed, [and] such allegedly false representations to a putative defendant does not remove the [*Noerr-Pennington*] immunity unless the elements of the sham exception are established."  *Id.* at *10; *see also PODS Enters.*, 2011

---

[4] As an extension of this reasoning, Getty Images' provision to SRIPLAW of a covenant not to sue (*see* Section III.D, *infra*) has no bearing on whether the Settlement Letter is objectively baseless.  *Cf. PRE*, 508 U.S. at 60 n.5 ("[W]hen [a defendant] has lost the underlying litigation, a court must resist the understandable temptation to engage in *post hoc* reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation.  The court must remember that even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.") (internal citations and quotation marks omitted).  Getty Images' covenant not to sue is in no way an admission by Getty Images regarding the perceived merits of its legal rights asserted in the Settlement Letter.

WL 4948397, at *4 (allegations that plaintiff was "well-aware that the [purported trademark at issue] is generic" did not show "at this juncture that [the plaintiff's] lawsuit [was] objectively baseless.").

The same reasoning applies here. SRIPLAW's legal contention that the Settlement Letter contains false accusations of copyright infringement is an insufficient basis for finding the Settlement Letter is objectively baseless as a matter of law. SRIPLAW's allegations regarding Getty Images' "practice" of false accusations of copyright infringement (Complaint ¶ 8) are equally unavailing, as "[r]epeated threats of litigation as a method of creating or maintaining anti-competitive conduct is within the scope of the immunity and does not fall within the sham exception." *Marco Island Cable*, 2006 WL 1814333, at *10 (citing *McGuire Oil*, 958 F.2d at 1559-62).

SRIPLAW has not pled that Getty Images' Settlement Letter was objectively baseless and has not pled facts to show that *Noerr-Pennington* immunity does not exist. *See McGuire Oil*, 958 F.2d at 1158 n.9 ("[T]he burden falls on [party asserting claim] . . . to allege facts sufficient to show that *Noerr-Pennington* immunity did not attach."). Accordingly, the Settlement Letter does not fall within the narrow "sham" exception to *Noerr-Pennington* immunity, and SRIPLAW's FDUTPA claim must be dismissed.

        **b.**    **SRIPLAW Has Failed to Plead that Getty Images Had a Subjective Motivation to Interfere Directly with SRIPLAW's Business.**

Because the Settlement Letter was not objectively baseless as a matter of law, the "sham" exception to *Noerr-Pennington* immunity is defeated and the Court need not consider Getty Images' subjective motivation. *PRE*, 508 U.S. at 60 ("Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation."). But even if SRIPLAW's allegations could establish objective baselessness – which they cannot – the sham exception does not apply because SRIPLAW fails to make a single allegation claiming that Getty Images had the subjective motivation to directly interfere with SRIPLAW's business. *Cf. CIBA Vision Corp. v. De Spirito*, 1:09-CV-01343-JOF, 2010 WL 553233, at * 7 (N.D. Ga. Feb. 10, 2010) (dismissing counterclaim for failure to allege how moving party's business was harmed or any other allegations of subjective intent to directly interfere with moving party's business). "[M]ere knowledge that the filing of a suit may collaterally damage a litigant is not evidence of a bad-faith motive." *In re Terazosin Hydrochloride*, 335 F. Supp. 2d at 1365 (citing *PRE*, 508 U.S. at

60) (Stevens, J., concurring) ("[w]e may presume that every litigant intends harm to his adversary . . .").

Not only is the Complaint devoid of any allegations of an improper subjective motivation, but Getty Images is presumed as a matter of law to have been acting in good faith in protecting its rights in the Image. That presumption applies because this case involves the enforcement of intellectual property rights. *Cf. In re Terazosin*, 335 F. Supp. 2d at 1364-65 (internal citation and quotation marks omitted); *Viva Optique, Inc. v. Contour Optik, Inc.*, 03 Civ. 8948(LTS)(AJP), 2007 WL 4302729, at *2 (S.D.N.Y. Dec. 7, 2007) ("Aside from the allegation of subjective intent, the Amended Complaint simply asserts that Defendants owned a patent and sought to enforce it. Given that such behavior is normally expected of patent holders the additional generalized allegation that Defendants subjectively believed that their patents were actually invalid or not infringed is insufficient to sustain a plausible claim that Defendants' suits are objectively meritless.") (internal citations and quotation marks omitted). That presumption of good faith is only reinforced by the text of the Settlement Letter itself, which plainly states Getty Images' good faith purpose for sending the letter: "As the leading worldwide provider of digital media, Getty Images is deeply committed to protecting the interests, intellectual property rights and livelihood of the photographers, filmmakers and other artists who entrust Getty Images to license their work." Complaint Ex. A at 1.

SRIPLAW utterly fails to bear its burden to plead that Getty Images sent the Settlement Letter with a subjective motivation to interfere directly with SRIPLAW's business. SRIPLAW's Complaint does nothing to undermine the good faith presumption that Getty Images' motivation for sending the Settlement Letter was to enforce its rights to the Image by attempting to settle potential legal action against a party it believed to be using the Image without a valid license. In fact, as noted in Section II, *supra*, the Settlement Letter speaks for itself in demonstrating Getty Images' motivations, considering the acknowledgment of potential error on Getty Images' part, and the inquiries about licensing information. Complaint Ex. A; *see also Brown*, 2008 WL 2597938, at *2.

SRIPLAW has failed to allege that the Settlement Letter Getty Images sent to SRIPLAW falls within the narrow "sham" exception to *Noerr-Pennington* immunity. Accordingly, SRIPLAW's FDUTPA claim must be dismissed.

**C.    SRIPLAW's FDUTPA Claim Should Be Dismissed for Failure to State a Violation of FDUTPA.**

**1.    A Pre-Litigation Settlement Letter Is Not an Unfair or Deceptive Practice.**

FDUTPA provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.204(1). FDUTPA is a consumer protection law intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices . . . ." *Id.* § 501.202(2). An "unfair practice" is "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Merrill Lynch Business Financial Srvs., Inc. v. Performance Machine Sys., U.S.A., Inc.*, 04-60861-CIV, 2005 WL 975773, at *8 (S.D. Fla. Mar. 4, 2005) (internal citation and quotation marks omitted) (dismissing FDUTPA claim for failure to plead that defendant's lending practices constituted an "unfair or deceptive act"). Here, SRIPLAW alleges a single basis for Getty Images' liability under FDUTPA: sending SRIPLAW the Settlement Letter that asked for proof of a license or settlement. Complaint ¶ 43. That allegation is insufficient on its face to constitute an "unfair practice" under FDUTPA. *Cf. PODS Enters.*, 2011 WL 4948397, at *3 (allegation that lawsuit to enforce trademark rights could not serve as the basis for common law unfair competition claim).

**2.    Sending a Pre-Litigation Settlement Letter Is Not "Conduct of Any Trade or Commerce."**

Even if SRIPLAW had sufficiently alleged that the Settlement Letter was an "unfair or deceptive practice," SRIPLAW's FDUTPA claim would still fail as a matter of law because sending pre-litigation demand letters does not constitute "conduct of any trade or commerce." FDUTPA defines "trade or commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property whether tangible or intangible, or thing of value, wherever situated." Fla. Stat. § 501.203(8). A plain reading of the statute shows that sending the Settlement Letter is not the type of conduct included in the definition of "trade or commerce."

Courts in this Circuit consistently have held that "conduct in pursuit of legal remedies is not 'trade or commerce'" under FDUTPA." *Kelly v. Palmer, Reifler, & Assocs., P.A.*, 681 F.

Supp. 2d 1356, 1376 (S.D. Fla. 2010); *see also Trent v. Mortgage Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1365 n.12 (M.D. Fla. 2007) *aff'd*, 288 Fed. Appx. 571 (11th Cir. 2008) ("That [defendant] communicated pre-suit with plaintiffs [regarding impending foreclosure action] . . . does not fall within the purview of 'trade or commerce' [under FDUTPA]."). In *Kelly* a law firm sent pre-litigation demand letters on behalf of its retail store clients in an effort to recover losses from theft. The letters instructed the recipients to pay a monetary sum to settle the matter or else risk possible civil action. *Kelly*, 681 F. Supp. 2d at 1361-62. The letter-recipient plaintiffs alleged that the demand letters contained various misrepresentations, including that attorneys had evaluated the claims against the recipient. *Id.* at 1371-72. The court dismissed the plaintiffs' FDUTPA claim, finding "Plaintiffs' attempt to include pre-suit demand letters within the scope of the term 'trade or commerce' simply misses the mark. We will not hold under these facts that soliciting or offering a release in exchange for money is the equivalent of soliciting or offering a 'thing of value' under FDUTPA." *Id.* at 1376.

The mailing of a pre-litigation demand letter, even one that contains alleged misrepresentations as claimed in *Kelly*, does not constitute "trade or commerce" and is therefore not actionable under the FDUTPA.

**D.   SRIPLAW's Claim for Declaratory Judgment Should Be Dismissed for Lack of an Actual Controversy.**

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). For subject matter jurisdiction to exist under the Declaratory Judgment Act, "the facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal citation and quotation marks omitted). The dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* (internal citation and quotation marks omitted). In addition, the "actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed. Cir. 1995), *abrogated on other*

13

*grounds as recognized by Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871 (Fed. Cir. 2008) (citing *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).

A declaratory judgment claim becomes moot if the party actually or potentially alleging infringement serves a properly executed covenant not to assert the current infringement claim that is "sufficiently broad to eliminate the controversy [at issue]." *Harris Corp. v. Federal Express Corp.*, 670 F. Supp. 2d 1306, 1310, 1313 (M.D. Fla. 2009); *Ameritox, Ltd. v. Aegis Servs. Corp.*, 07-80498-CIV, 2009 WL 790116, at *2-*3 (S.D. Fla. Mar. 24, 2009) (dismissing declaratory judgment claim for lack of subject matter jurisdiction after plaintiff served a covenant not to sue defendant based on the patents underlying the formerly pending infringement action); *cf. Super Sack Mfg.*, 57 F.3d at 1058 ("a patentee defending against an action for a declaratory judgment [] can divest the trial court of jurisdiction over the case by filing a covenant not to assert the patent at issue against the putative infringer with respect to any of its past, present, or future acts").

Here, Getty Images served (and filed with this motion) a covenant not to sue SRIPLAW for its current or past use of the Image. The covenant is both properly executed and sufficiently broad to eliminate the Image-related controversy between Getty Images and SRIPLAW. Because Getty Images served and filed the covenant prior to a judicial determination of non-infringement, the covenant is timely. *See Harris*, 670 F. Supp. 2d at 1311. Likewise, because the covenant is a separate exhibit signed by a representative of Getty Images, the form of the covenant is proper and constitutes an enforceable promise. *Id.* at 1311-12.

For these reasons, SRIPLAW's claim for declaratory judgment is moot and the Court therefore lacks subject matter jurisdiction over that claim. Accordingly, the declaratory judgment claim must be dismissed.

**E.   SRIPLAW's FDUTPA Claim Against Getty Images Should be Dismissed With Prejudice.**

"Ordinarily, a party must be given at least one opportunity to amend before the district court dismisses the complaint." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005). However, leave to amend is not warranted when amendment would be futile. *Id.*

As described above, *Noerr-Pennington* immunity bars FDUTPA claims arising from pre-litigation activity unless the plaintiff can show that the "sham exception" applies. SRIPLAW has failed to allege that Getty Images' Settlement Letter was objectively baseless and that Getty

Images had a subjective motivation to interfere directly with SRIPLAW's business, both of which are required for the "sham exception") to apply. Although SRIPLAW could conceivably plead these two elements of the "sham exception," it has no good faith basis to do so. But even if the law firm attempted to cure this pleading defect to address *Noerr-Pennington* immunity, dismissal of SRIPLAW's amended FDUTPA claim would still be required because sending pre-litigation settlement letters, like the Settlement Letter at issue here, is not an unfair or deceptive practice, *see supra* Section III.C.1, and is not "conduct of trade or commerce," *see supra* Section III.C.2, as a matter of law.[5] Accordingly, amendment would be futile because SRIPLAW's FDUTPA claim fails as a matter of law under any construction of the complaint. *See, e.g.*, *Miccosukee Tribe of Indians of Florida v. Jewel*, 996 F. Supp. 2d 1268, 1274-75 (S.D. Fla. 2013).

## IV. CONCLUSION

For the foregoing reasons, SRIPLAW's Complaint should be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(1).

---

[5] Pursuant to Local Rule 7.3, Getty Images will file a motion for attorneys fees incurred in connection with SRIPLAW's FDUTPA claim. Under Fla. Stat. 501.2105(1), the prevailing party on a FDUTPA claim may be awarded its attorneys fees. *See M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 30 F.3d 113, 115-16 (11th Cir. 1994) (party that successfully brings motion to dismiss FDUTPA claim is prevailing party); *Brown v. Gardens by the Sea South Condominium Assoc.*, 424 So. 2d 181, 184 (Fla. 4th DCA 1983) (awarding attorneys fees to prevailing defendant on purported FDUTPA claim); *Rustic Village, Inc. v. Friedman*, 417 So. 2d 305, 305 (Fla. 3d DCA 1982) ("[W]here a plaintiff brings a claim under the Act, an attorney's fee is to be allowed a prevailing defendant even though the trial judge holds that the action is not one contemplated by the Act.").

Dated:  September 26, 2014

    Respectfully submitted,

    By: s/ *Robert P. Santiago*
        Michael P. Woodbury, Esq.
        Florida Bar Number 983690
        Robert P. Santiago, Esq.
        Florida Bar Number 62650
        **WOODBURY, SANTIAGO & CORREOSO, P.A.**
        9100 S. Dadeland Blvd., Suite 1702
        Miami, Florida 33156
        Telephone: 305.670.9580
        Facsimile: 305.670.2170
        Michael.Woodbury@woodbury-santiago.com
        Robert.Santiago@woodbury-santiago.com
        Service@woodbury-santiago.com

        -   and   -

    By: s/ *Scott T. Wilsdon*
        Scott T. Wilsdon, Esq. (*pro hac vice*, pending)
        Jeremy E. Roller, Esq. (*pro hac vice*, pending)
        **YARMUTH WILSDON PLLC**
        818 Stewart Street, Suite 1400
        Seattle, Washington 98101
        Telephone: 206.516.3800
        Facsimile:  206.516.3888
        wilsdon@yarmuth.com
        jroller@yarmuth.com

        *Attorneys for Defendant Getty Images (US), Inc.*

**LOCAL RULE 7.1(a)(3) CERTIFICATION**

On September 25, 2014, counsel for Getty Images listed below called and emailed counsel for SRIPLAW to inquire regarding whether SRIPLAW would agree to all or part of the relief sought by this motion. By email, SRIPLAW's counsel responded and stated that counsel were not available to confer until Monday, September 29, 2014. Getty Images' counsel and SRIPLAW's counsel intend to confer on Monday, September 29, 2014, and will promptly apprise the Court if any of the issues raised in this motion are resolved in that conference.

By: */s/ Scott T. Wilsdon*
    Scott T. Wilsdon, Esq. (*pro hac vice*, pending)
    Jeremy E. Roller, Esq. (*pro hac vice*, pending)
    **YARMUTH WILSDON PLLC**
    818 Stewart Street, Suite 1400
    Seattle, Washington 98101
    Telephone: 206.516.3800
    Facsimile: 206.516.3888
    wilsdon@yarmuth.com
    jroller@yarmuth.com

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on September 26, 2014, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.

      By: s/ *Robert P. Santiago*